700 S.E.2d 289

**STATE of West Virginia, Plaintiff,**

v.

**Billy Ray MCLAUGHLIN, Defendant.**

**No. 34860.**

Supreme Court of Appeals of
West Virginia.

Submitted March 30, 2010.

Decided June 8, 2010.

Gregory L. Ayers, Esq., Public Defenders Corporation, Charleston, WV, Joseph A. Noggy, Esq., Marcia Hebb, Esq., Beckley, WV, for Defendant.

Timothy F. Cogan, William C. Gallagher, Cassidy, Myers, Cogan & Voegelin, L.C., Wheeling, WV, for Amicus, Shane Shelton.

Barbara Allen, Esq., Attorney General's Office, Charleston, WV, for Plaintiff.

Gina M. Stanley, Public Defender Corporation, Huntington, WV, for Amicus, Jeffrey L. Finley.

WORKMAN, Justice:

This case is before the Court upon an Order of the Circuit Court of Greenbrier County, West Virginia, certifying questions concerning the upcoming retrial of the mercy phase of the Defendant's,[1] Billy Ray McLaughlin's, first degree murder case. After examining the briefs submitted,[2] hearing oral arguments and reviewing the relevant law, the Court has reformulated the questions with answers as explained in detail below.[3]

## I. Facts and Proceedings Below

On April 4, 1995, the Defendant was indicted for the first degree murder of his wife in Pocahontas County, West Virginia.[4] At his trial, the Defendant was convicted of first degree murder without a recommendation of mercy and sentenced to life without mercy. This conviction came after the jury was instructed that if it recommended mercy, the Defendant would be eligible for parole in ten years;[5] however, at the time, West Virginia Code § 62–3–15 (2005)[6] had been amended and required the Defendant to serve fifteen years before becoming eligible for parole. The Defendant was subsequently sentenced to life in prison without the possibility of parole. His direct appeal was refused by the Court (5–0).

On August 28, 1998, the Defendant filed a petition for writ of habeas corpus in Fayette

---

1. In the briefing before this Court, the Defendant refers to himself as the Appellant and the Plaintiff, State of West Virginia, refers to itself as the Appellee. This case, however, is not before the Court upon an appeal. Consequently, the parties remain simply the Plaintiff and the Defendant. W. Va. R.App. P. 13 (referring to "the party presenting the certified question"). For further clarity, the Court refers to the Plaintiff simply as the State.

2. The Court considered the amicus curiae briefs submitted on behalf of Shane Shelton and Jeffrey L. Finley, two defendants who, like the Defendant herein, are awaiting retrial of the penalty or mercy phase after having been convicted of first degree murder.

3. The Court has repeatedly stated that it retains some flexibility in determining how and to what extent certified questions will be answered, including reformulating the question(s) posed as needed. *See State Auto. Mut. Ins. Co. v. Youler,* 183 W.Va. 556, 561 n. 5, 396 S.E.2d 737, 742 n. 5 (1990); Syl. Pt. 3, *Kincaid v. Mangum,* 189 W.Va. 404, 432 S.E.2d 74 (1993) ("When a certified question is not framed so that this Court is able to fully address the law which is involved in the question, then this Court retains the power to reformulate questions certified to it under both the Uniform Certification of Questions of Law Act found in *W. Va.Code,* 51–1A–1, *et seq.* and *W. Va.Code,* 58–5–2 [1967], the statute relating to certified questions from a circuit court of this State to this Court.").

4. Venue was changed to Greenbrier County, West Virginia.

5. The mercy phase of the Defendant's trial was not bifurcated. It is important to note, however, that law enunciated by the Court in the instant matter is applicable in cases that are bifurcated pursuant to the Court's decision in *State v. LaRock,* 196 W.Va. 294, 470 S.E.2d 613 (1996).

6. West Virginia Code § 62–3–15 provides, in relevant part:

> If a person indicted for murder be found by the jury guilty thereof, they shall in their verdict find whether he or she is guilty of murder of the first degree or second degree. If the person indicted for murder is found by the jury guilty thereof, and if the jury find in their verdict that he or she is guilty of murder of the first degree, or if a person indicted for murder pleads guilty of murder of the first degree, he or she shall be punished by imprisonment in the penitentiary for life, and he or she, notwithstanding the provisions of article twelve [§§ 62–12–1 et seq.], chapter sixty-two of this code, shall not be eligible for parole: Provided, That the jury may, in their discretion, recommend mercy, and if such recommendation is added to their verdict, such person shall be eligible for parole in accordance with the provisions of said article twelve, except that, notwithstanding any other provision of this code to the contrary, such person shall not be eligible for parole until he or she has served fifteen years....

W. Va.Code § 62–3–15.

County, West Virginia, which was transferred to Greenbrier County.[7] In his habeas petition, the Defendant alleged that he was denied his right to due process when the trial court erroneously instructed the jury that if it recommended mercy, he would be eligible for parole in ten years when, in fact, he would be required to serve fifteen years before becoming eligible for parole. Based upon *State v. Doman*, 204 W.Va. 289, 512 S.E.2d 211 (1998)(per curiam),[8] the circuit court agreed that the instruction was erroneous and granted habeas relief to the Defendant in the form of a new trial solely on the issue of whether he should receive a recommendation of mercy.

The Defendant appealed the circuit court's habeas decision to this Court, arguing that he should be granted a new trial on all issues. The appeal was refused. The Defendant then filed a Petition for Writ of Certiorari to the United States Supreme Court, which was denied on February 21, 2006. *See McLaughlin v. McBride*, 546 U.S. 1186, 126 S.Ct. 1366, 164 L.Ed.2d 75 (2006).

During the pretrial proceedings for the retrial of the mercy phase, the trial court certified three questions regarding the retrial.[9] The questions posed by the trial court are as follows:

Question 1: Whether or not Chapter 62 Article 3 section 15 of the West Virginia Code unconstitutionally shifts the burden of persuasion on the issue of mercy to the defendant in the penalty phase of a case?

Answer: [Y]es, if the language of the statute permits the burden of proving mercy to shift to the Defendant or permits less than a unanimous verdict of the jury on the issue of mercy.

Question 2: Is it required that the jury, which determined guilt, be the same jury that determines the issue of mercy in a first degree murder case given the language of W. Va.Code 62–3–15 that provides: "if *the* jury find in their verdict that … [the accused] is guilty of murder in the first degree … *the* jury may, in their discretion, recommend mercy, and if such recommendation is added to their verdict, such a person shall be eligible for parole[.]"?

Answer: [N]o.

Question 3: Is the prosecution limited in the mercy stage of a bifurcated trial to the presentation of evidence introduced in the guilt stage of trial and rebuttal of evidence presented by the defendant?

Answer: This Court finds that the answer to this question depends in part on the determination on how the first two questions are answered. With respect to Question 3, it is this Court's position that since the burden is on the State, (based on the answer to Question 1), the State would be required to present its case first.

## II. Standard of Review

In syllabus point one of *Gallapoo v. Wal–Mart Stores, Inc.*, 197 W.Va. 172, 475 S.E.2d 172 (1996), this Court held that "[t]he appellate standard of review of questions of law answered and certified by a circuit court is *de novo*." *Id.* Likewise, a de novo standard of review governs the interpretation of any statutory provision as it involves a purely legal question. Syl. Pt. 1, *Appalachian Pow-*

---

7. The Defendant filed a petition for writ of prohibition to prohibit the transfer of his habeas to Greenbrier County, which was denied in *State ex rel. McLaughlin v. Vickers*, 207 W.Va. 405, 533 S.E.2d 38 (2000).

8. In *Doman*, the Court reversed and remanded the defendant's case for a retrial of the mercy phase due to the jury being wrongfully instructed that the defendant was eligible for parole after ten years, rather than fifteen, which is exactly what precipitated the retrial of the mercy phase in the instant case. 204 W.Va. at 294, 512 S.E.2d at 216.

9. The Defendant moved the Court to give him a new trial on both the guilt phase, as well as the mercy phase. By Order entered January 4, 2008, the trial court denied the Defendant's motion. The trial court has also granted, over the Defendant's objection, the State's motion to present an additional witness pursuant to West Virginia Rule of Evidence 404(b) during the mercy phase, who had not testify during the Defendant's original trial.

*er Co. v. State Tax Dep't,* 195 W.Va. 573, 466 S.E.2d 424 (1995). Applying the foregoing de novo standard of review, the Court examines the certified questions posed and answered by the circuit court.

## III. Discussion of Law

### A. Certified Question 1

 The first question the Court[10] addresses is whether West Virginia Code § 62–3–15 unconstitutionally shifts the burden of persuasion[11] on the issue of mercy to the defendant in the penalty phase of a case?[12] The parties agree that neither has the burden of proof in a bifurcated mercy proceeding under the provisions of West Virginia Code § 62–3–15. While the circuit court phrased the first certified question in terms of the constitutionality of the statute, it is important to note at the outset that the constitutionality of West Virginia Code § 62–3–15 has been upheld by this Court in several decisions.[13] Indeed, the issue is so-well-settled that in *State v. LaRock,* 196 W.Va. 294, 470 S.E.2d 613 (1996), the Court stated that "[f]urther inquiry and evaluation of the

statute's constitutionality hardly would be worth the effort, resources, and costs." *Id.* at 313, 470 S.E.2d at 632.

Notwithstanding the fact that the constitutionality of West Virginia Code § 62–3–15 is well-established, the statute does not expressly address which party has the burden of proof as to the sentencing phase of the jury deliberations. The trial court specifically found that the statute was unconstitutional, stating that:

> [i]n *State v. LaRock,* 196 W.Va. 294, 470 S.E.2d 613 (1996), our Supreme Court indicated the (mercy) statute was unconstitutional, and they did so because they said insofar as the statute—and they quote it—shifts to a defendant, the burden of disproving a material element of the State's case, in violation of the due process clauses found in Article 3, Section 10, of the Constitution of West Virginia, and the 14th Amendment of the United States Constitution, that individual provision, severed from the remainder of the statute, is unconstitutional and unenforceable. Justice

10. The first certified question posed by the circuit court was really two separate questions and will be treated as such by the Court.

11. Although the trial court posed the certified question in terms of "burden of persuasion," both the parties use the phrases "burden of persuasion" and "burden of proof" interchangeably. The phrases, however, have different meanings. Burden of proof "connotes the obligation to establish a particular issue by the required level of proof." 2 F. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 12–1(B)(1) (4th ed.2000). The burden of persuasion "refers to the practical forensic burden of persuading the fact finder of the 'truth' of particular issues as to which evidence has been produced. The burden of persuasion, in other words, calls for the art of advocacy." Cleckley, *supra.,* at § 12–1(B)(3). It is clear that the parties and the trial court are questioning the burden of proof applicable to a mercy determination.

12. The Defendant added another argument to the first certified question contending that West Virginia Code § 62–3–15 is unconstitutional because it does not contain any standards to guide the jury's exercise of discretion. The State, however, correctly points out that the Defendant never raised the issue of standards before the trial court and, therefore, this issue was not addressed by the trial court. The Court has previously stated that only questions that have been decided

by the circuit court and certified by it to this Court may be considered for certification. *Means v. Kidd,* 136 W.Va. 514, 516–17, 67 S.E.2d 740, 742 (1951); *see also Gee v. Gibbs,* 162 W.Va. 821, 828, 253 S.E.2d 140, 144 (1979).

Notwithstanding the Defendant's raising the additional question for the first time before this Court and not the trial court, the Court has already resolved the issue regarding the imposition of standards to guide the jury's exercise of discretion in the mercy or penalty phase in *State v. Miller,* 178 W.Va. 618, 622 & n. 8, 363 S.E.2d 504, 508 & n. 8 (1987). Indeed, in *Miller,* this Court held in syllabus point one that "[a]n instruction outlining factors which a jury should consider in determining whether to grant mercy in a first degree murder case should not be given." *Id.* at Syl. Pt. 1. In so holding, the Court noted that "[i]n jurisdictions where the decision to recommend mercy is left entirely within the discretion of the jury and is made binding on the trial court, it is uniformly held that an instruction which enumerates instances or suggests when a mercy recommendation might be appropriate is reversible error." *Id.* at 622, 363 S.E.2d at 508.

13. *See State ex rel. Leach v. Hamilton,* 280 S.E.2d 62 (W.Va.1980); *Moore v. McKenzie,* 160 W.Va. 511, 236 S.E.2d 342 (1977); and *State ex rel. Rasnake v. Narick,* 159 W.Va. 542, 227 S.E.2d 203 (1976).

Davis in that case goes on to summarize due process, stating the due process requirement places on the defendant no burden of proving mitigation, excuse, or justification in a First Degree Murder Case.

The trial court's reliance upon *LaRock* in reaching its answer that the provisions of West Virginia Code § 62–3–15 unconstitutionally shifts the burden of proof to the defendant is misplaced. Significantly, in *LaRock*, which was authored by Justice Cleckley, not Justice Davis, there is absolutely no discussion or suggestion that the provisions of West Virginia Code § 62–3–15 are unconstitutional because the statute shifts the burden of "disproving a material element of the State's case" to the defendant as the trial court found in the case sub judice. Rather, in *LaRock*, the issue before the Court was whether the consolidation of both the guilt and sentencing phases effectively denied the defendant a fair trial. 196 W.Va. at 313, 470 S.E.2d at 632. The defendant argued that the statute should be construed to permit discretionary bifurcation. *Id.* This Court agreed, holding that "[a] trial court has discretionary authority to bifurcate a trial and sentencing in any case where a jury is required to make a finding as to mercy." 196 W.Va. at 299, 470 S.E.2d at 618, Syl. Pt. 4.

Subsequent to *LaRock*, in *State v. Rygh*, 206 W.Va. 295, 524 S.E.2d 447 (1999), this Court found in footnote one that there is no "burden of proof" relative to the mercy recommendation. Rather, the Court opined:

> We do not believe that conceptually there is any separate or distinctive "burden of proof" or "burden of production [14]" associated with the jury's mercy/no-mercy determination in a bifurcated mercy phase of a murder trial, if the court in its discretion decides to bifurcate the proceeding. In making its overall verdict, in a unitary trial or a bifurcated trial, the jury looks at all of the evidence that the defendant and the prosecution have put on—and if the jury concludes that an offense punishable by life imprisonment was committed, then the jury determines the mercy/no-mercy portion of its verdict, again based on all of the evidence presented to them at the time of their determination. We would anticipate that a defendant would ordinarily proceed first in any bifurcated mercy phase.

206 W.Va. at 297 n. 1, 524 S.E.2d at 449 n. 1.

■ Based upon the foregoing, the Court now holds that the provisions of West Virginia Code § 62–3–15 do not place a burden of proof on either the State or the defendant for the mercy phase of a first degree murder trial where that phase is bifurcated. Because of the lack of a burden of proof in the bifurcated mercy phase of a first degree murder trial, the circuit court incorrectly found that there was an unconstitutional shifting of the burden of proof from the State to the Defendant.

### B. Certified Question 2

The next certified question is whether the jury's verdict must be unanimous in a bifurcated mercy phase of a first degree murder trial? The circuit court found that "insofar as the language of Chapter 62 Article 3 Section 15 of the West Virginia Code may permit a decision of less than a unanimous verdict by a jury finding beyond a reasonable doubt that a defendant is not entitled to a recommendation of mercy, such would be unconstitutional." While the Defendant advocates for a unanimous jury verdict on the issue of mercy, the State does not appear to take a clear position either way. The State maintains, however, that if the jury verdict for the mercy determination must be unanimous, then juries should be so instructed regardless of whether a bifurcated trial or a unitary trial occurs.

■ The answer to this question is found in the West Virginia Rules of Criminal

14. The burden of producing evidence refers to the obligation to make or to meet a *prima facie* (i.e., sufficient to prove a fact if no contradicting evidence was submitted) showing as to the particular issue. The burden of producing evidence lies with the party that would *lose* if no further evidence on the issue were received. It is for this reason that the burden of producing evidence is sometimes called the burden of 'going forth,' i.e., the burden of going forth with the production of evidence.

Cleckley, *supra*, at § 12–1(B)(2).

Procedure. In West Virginia Rule of Criminal Procedure 31, provides that in a criminal trial, "[t]he verdict shall be unanimous. It shall be returned by the jury to the judge in open court." *Id.* As the Court previously held in syllabus point one of *State v. Tennant*, 173 W.Va. 627, 319 S.E.2d 395 (1984), "Rule 31 of the West Virginia Rules of Criminal Procedure, which is modeled after Rule 31 of the Federal Rules of Criminal Procedure, mandates that the verdict in a criminal case be unanimous and provides a procedure for ensuring that the verdict is unanimous, i.e., the jury poll." [15] There is no limitation in Rule 31 that indicates that it only applies to the guilt phase of trials and not to the mercy phase where bifurcation has occurred. Accordingly, we hold that consistent with the provisions of West Virginia Rule of Criminal Procedure 31, a jury verdict in a bifurcated mercy phase of a first degree murder trial must be unanimous. [16]

### C. Certified Question 3

■ The third certified question is whether the jury that determines guilt must be the same jury that determines the issue of mercy in a first degree murder case? The circuit court answered this certified question in the negative, stating that "[t]his Court realizes this issue has not been ruled on specifically in a syllabus point, but our State Supreme Court has ruled the same jury on the issue of guilt does not have to be the same jury determining mercy."

The Defendant asserts that while the Court has implicitly ruled in *Doman* that the jury that determines guilt does not have to be the same jury that determines the issue of mercy, the *Doman* decision should be reconsidered and overruled. 204 W.Va. 289, 512 S.E.2d 211. According to the Defendant, the provisions of West Virginia Code § 62–3–15 require that the same jury make both findings regarding guilt and mercy. Further, the Defendant asserts that to the extent that this Court found differently in *Doman*, the constitutional doctrine of separation of powers was violated, because the Court effectively rewrote the statute. Finally, relying upon the United States Supreme Court decision in *Hicks v. Oklahoma*, 447 U.S. 343, 100 S.Ct. 2227, 65 L.Ed.2d 175 (1980), the Defendant argues that the provisions of West Virginia Code § 62–3–15 give the Defendant a due process right to have his guilt and the issue of mercy decided by the same jury.

In contrast, the State contends that the Defendant essentially is trying to elevate to constitutional status an argument which is really one of statutory construction "by mak-

**15.** In so holding, the Court stated that "[b]ecause of the clarity of Rule 31(a), we do not find it necessary to discuss whether our Constitution requires the verdict of a jury in a criminal case to be unanimous." 173 W.Va. at 629 n. 2, 319 S.E.2d at 398 n. 2.

**16.** This holding is to be applied prospectively. As the Court has previously stated:

"[A] judicial decision in a criminal case is to be given prospective application only if: (a) It established a new principle of law; (b) its retroactive application would retard its operation; and (c) its retroactive application would produce inequitable results." Syl. pt. 5, in part, *State v. Blake*, 197 W.Va. 700, 478 S.E.2d 550 (1996). *See also* Syl. pt. 5, *Bradley v. Appalachian Power Co.*, 163 W.Va. 332, 256 S.E.2d 879 (1979) ("In determining whether to extend full retroactivity, the following factors are to be considered: First, the nature of the substantive issue overruled must be determined. If the issue involves a traditionally settled area of law, such as contracts or property as distinguished from torts, and the new rule was not clearly foreshadowed, then retro-

activity is less justified. Second, where the overruled decision deals with procedural law rather than substantive, retroactivity ordinarily will be more readily accorded. Third, common law decisions, when overruled, may result in the overruling decision being given retroactive effect, since the substantive issue usually has a narrower impact and is likely to involve fewer parties. Fourth, where, on the other hand, substantial public issues are involved, arising from statutory or constitutional interpretations that represent a clear departure from prior precedent, prospective application will ordinarily be favored. Fifth, the more radically the new decision departs from previous substantive law, the greater the need for limiting retroactivity. Finally, this Court will also look to the precedent of other courts which have determined the retroactive/prospective question in the same area of the law in their overruling decisions."). *State v. Guthrie*, 205 W.Va. 326, 343 n. 25, 518 S.E.2d 83, 100 n. 25 (1999). Because West Virginia Rule of Criminal Procedure 31 has been in existence for years, with the last amendment occurring in 1995, the Court does not view its holding as establishing a new principle of law.

ing the sweeping pronouncement that he 'has a state and federal constitutional due process right to be sentenced according to the statutory procedure of W. Va.Code § 62–3–15, which requires that any decision as to mercy be part of a new trial on guilt/innocence.' "

The Defendant's argument is fatally flawed because it is based upon an erroneous reading of the provisions of West Virginia Code § 62–3–15. West Virginia Code § 62–3–15 provides, in pertinent part, that

> [i]f the person indicted for murder is found by *the jury* guilty thereof, and if the jury find in their verdict that he or she is guilty of murder of the first degree, or if a person indicted for murder pleads guilty of murder of the first degree, he or she shall be punished by imprisonment in the penitentiary for life.... Provided, That *the jury* may, in their discretion, recommend mercy, and if such recommendation is added to their verdict, such person shall be eligible for parole in accordance with the provisions of said article twelve, except that, not withstanding any other provision of this code to the contrary, such person shall not be eligible for parole until he or she has served fifteen years....

*Id.* (emphasis added). The Defendant posits that by the Legislature's use of the phrase "the jury," the Legislature meant "the same jury." Thus, the Defendant reads into the statute the word "same," which simply does not exist.

"Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syl. Pt. 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968). There is a lack of any argument before the Court that the provisions of West Virginia Code § 62–3–15 are ambiguous. This Court's function, therefore, is to accept the plain meaning of West Virginia Code § 62–3–15 without resorting to any interpretation. *Id.* The plain meaning of the phrase "the jury" is "[a] group of persons selected according to law and given the power to decide questions of fact and return a verdict in the case submitted to them." *Black's Law Dictionary* 934 (9th ed.2009). Absent from this plain meaning, as well as the entire statute, is language which indicates that the jury which decides a defendant's guilt must be the same jury that decides whether to recommend mercy if a defendant is convicted of first degree murder.[17]

This Court has considered this question of whether different juries can decide the guilt phase and the mercy phase on three occasions. In three separate opinions, the Court has upheld remand of the case for a new trial on the mercy phase with a new jury, where the first degree murder conviction otherwise was valid.

The first case in which the Court delved into this issue is *Doman*, a case closely akin to the instant matter. The defendant in

---

**17.** The Court further finds no merit to the Defendant's attempt to elevate a statutory construction argument to a constitutional level. First, the Court rejects the Defendant's argument that the Court violated the Separation of Powers Clause of the West Virginia Constitution by "rewriting" the provisions of West Virginia Code § 62–3–15. To the contrary, if the Court were to accept the Defendant's position that the jury that determines guilt must be the same jury that determines the mercy phase, then the Court would be rewriting the statute to add the word "same" before jury, which a plain reading of the statute reveals currently does not exist.

The Court further refuses to adopt the Defendant's argument regarding due process as a clear reading of the United States Supreme Court's decision in *Hicks v. Oklahoma*, 447 U.S. 343, 100 S.Ct. 2227, 65 L.Ed.2d 175 (1980), does not even remotely suggest that the same jury must determine both the guilt phase and the mercy phase. Rather, in *Hicks*, the judgment was vacated be-

cause under Oklahoma's statute, the defendant was entitled to have his punishment fixed by a jury. The Oklahoma statute was declared unconstitutional by an Oklahoma appeals court after the defendant had been sentenced. The defendant appealed, seeking to have his sentence set aside due to the unconstitutionality of the statute. The Oklahoma appeals court affirmed the sentence, finding that it was within the range of punishment that a jury could have imposed, despite the unconstitutionality of the sentence. *Id.* at 345, 100 S.Ct. 2227. The United States Supreme Court, however, found that the defendant was denied a substantive due process right when the appellate court fixed the sentence because, under the statute at issue, the defendant should have only been deprived of his liberty to the extent determined by the jury in the exercise of its statutory discretion. *Id.* at 347, 100 S.Ct. 2227. In the case sub judice, the defendant simply has not been denied having a jury make the determination of mercy.

*Doman* was convicted of first degree murder and sentenced to life imprisonment without mercy. 204 W.Va. at 290, 512 S.E.2d at 212. On appeal, the defendant claimed that his conviction should be reversed because the circuit court improperly instructed the jury on when the defendant would be eligible for parole if he received a recommendation of mercy. *Id.*

The Court agreed and reversed and remanded the case, in part, for a new trial on the sole question of whether the defendant should receive mercy. The Court based its decision to reverse only on this question, stating that "we cannot see how the improper instruction affected the jury's underlying conclusion that the appellant was guilty of the crime charged." *Id.* at 292, 512 S.E.2d at 214. Thus, relying on this Court's decision in *LaRock*, which provided for the bifurcation of the guilty phase and the recommendation of mercy phase of the jury, the Court stated that:

[i]n the present case, where the instructional error could not have, in this Court's view, affected the finding of guilt, the Court believes that it would be a waste of judicial resources to require an entirely new trial, rather than to require a limited trial on the recommendation of mercy.

*Id.*

Then, in *State v. Finley*, 219 W.Va. 747, 753, 639 S.E.2d 839, 845 (2006), *cert. denied*, 549 U.S. 1298, 127 S.Ct. 1860, 167 L.Ed.2d 351 (2007), the guilty phase and the mercy phase of the defendant's trial for first degree murder and sexual assault in the second degree were bifurcated. During the mercy phase of the proceeding, the trial court denied the defendant's motion to wear civilian clothing, thereby essentially compelling him to wear prison garb during the penalty phase. *Id.* at 749, 639 S.E.2d at 841. On appeal, the defendant asserted that if the Court found that the penalty phase was fatally flawed due to the trial court's ruling, requiring the appellant to wear prison clothing during the penalty phase, then "the only proper remedy is a new trial and not simply a remand for retrial of the mercy determination." *Id.* at 753, 639 S.E.2d at 845. The defendant argued, similar to the Defendant's

argument herein, that the language of West Virginia Code § 62–3–15 "mandates that the same jury which determines the issue of guilt must also be the jury that decides the issue of mercy." 219 W.Va. at 753, 639 S.E.2d at 845.

While the Court found that the penalty phase was flawed due to the trial court requiring the defendant to wear prison attire, the Court rejected the defendant's interpretation of the statutory provision, which would have required the entire conviction to be set aside. Instead, just as in *Doman*, the Court set aside the defendant's penalty phase recommendation. *Id.* In so doing, the Court instructed:

Upon remand, the court shall empanel a jury for trial of the sole issue of whether mercy is to be recommended for the sentencing of Appellant. Since the jury would not have information regarding the guilt phase of the trial, the lower court should exercise reasonable discretion in determining how the circumstances of the commission of the crime are to be conveyed to the jury in addition to other evidentiary matters appropriate to the mercy phase that the parties may adduce.

*Id.*

Most recently, in *State ex rel. Shelton v. Painter*, 221 W.Va. 578, 655 S.E.2d 794 (2007), relying on the early cases of *Doman* and *Finley*, the Court stated:

In the present case, where the actions of trial counsel could not have affected the finding of guilt, we believe that it would be a waste of judicial resources to require an entirely new trial. Therefore, rather than require a new trial on the issues of guilt and penalty, we believe the more prudent course would be to require a limited new trial only on the penalty issue—whether or not the appellant should or should not receive mercy.

221 W.Va. at 586, 655 S.E.2d at 802.

Consequently, this Court has on three occasions allowed for the sole retrial of the penalty phase where there is no reason to reverse the conviction. By so doing, the Court has implicitly construed the provisions of West Virginia Code § 62–3–15 to mean

that a different jury than that which decided the guilt phase of a first degree murder case can be used to decide the mercy phase of the case, and that the phrase "the jury" in West Virginia Code § 62–3–15 refers to the jury in the conceptual and institutional sense. The Court, therefore, now holds that the provisions of West Virginia Code § 62–3–15 do not require that the jury that decides the guilt phase of a first degree murder case must also be the same jury that decides the mercy phase of the case. While it should be a rarity that a different jury is used, it sometimes becomes a necessity in cases such as the instant one where there are no meritorious grounds to overturn the underlying conviction and the defendant is only entitled to a retrial on the mercy phase. The circuit court correctly answered this question.

### D. Certified Question 4

■ The last certified question asks whether the prosecution is limited in the mercy stage of a bifurcated trial to the presentation of evidence introduced in the guilt phase of trial and rebuttal of evidence presented by the defendant? The circuit court found that the burden of proof is on the State and, therefore, the State is required to present its case first. This answer, however, does not answer the question presented. The Defendant posits that "the trial court has, however, effectively answered the question in the negative by its ruling that the State may present additional Rule 404(b), WVRE, witnesses that did not testify at McLaughlin's original trial." The Defendant argues that this type of evidence should not be allowed where it was not offered in the original trial.[18] The State does not really take a specific position on this particular

evidence, but simply defers to the discretion of the trial court's evaluation on the admissibility of the evidence. The State does reiterate that there is no burden of proof at this stage; however, the State asserts that logic dictates that the Defendant would ordinarily go first. The State also offers that since in this case, the jury that determined guilt is not the same jury that will decide mercy, the trial court should be given the discretion to decide how much, if any, trial evidence should be re-presented to the jury in order to demonstrate the circumstances of the crime before the Defendant presents evidence relevant to mercy. Alternatively, the State suggests that the trial court could instruct the jury at the outset that another jury has found the Defendant guilty beyond a reasonable doubt of the crime, and that this trial is solely for the purpose of deciding whether the Defendant is entitled to mercy making him eligible for parole after fifteen years.

The Court has discussed in several opinions the scope of evidence which may be admitted during the mercy phase of a bifurcated first degree murder proceeding. For instance, the Court has stated that

> the jury looks at all of the evidence that the defendant and the prosecution have put on—and if the jury concludes that an offense punishable by life imprisonment was committed, **then the jury determines the mercy/no-mercy portion of its verdict, again based on all of the evidence presented to them at the time of their determination.**

*Rygh*, 206 W.Va. at 297 n. 1, 524 S.E.2d at 449 n. 1 (emphasis added).[19]

In *Finley*, the Court, however, stated that

---

**18.** It is important to note that one of the amici curiae, Shane Shelton, maintains that the Circuit Court of Ohio County, West Virginia, has ruled that in his retrial of the mercy phase, no evidence could be submitted at the retrial unless it would have been available on the day following the end of his trial, which occurred in May 1998. Mr. Shelton desires to admit post-conviction evidence regarding his current character. The specific evidence that this defendant seeks to have admitted includes the defendant receiving his GED, taking college courses, and completing a course in anger management. Thus, Mr. Shelton requests that the Court prohibit the State from introducing additional evidence during the mer-

cy phase, but allow a defendant to waive the application of the rule.

**19.** The Court also stated in *Rygh* that "the possibility of bifurcation of a mercy phase is not an open door to the expansion of the ambit of evidence that the prosecution may put on against a defendant, in the absence of the defendant opening that door to permit narrowly focused impeachment or rebuttal evidence from the prosecution." 206 W.Va. at 297 n. 1, 524 S.E.2d at 449 n. 1. The Court further recognized that

> the evidentiary opportunities that a defendant may have in a mercy phase, as a result of bifurcation, may in turn affect the evidentiary

[a]t the penalty phase, the jury is no longer looking narrowly at the circumstances surrounding the charged offense. In order to make a recommendation regarding mercy, the jury is bound to look at the broader picture of the defendant's character—examining the defendant's past, present and future according to the evidence before it—in order to reach its decision regarding whether the defendant is a person who is worthy of the chance to regain freedom. See *Zant v. Stephens*, 462 U.S. 862, 900, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983) (Rehnquist, J., concurring in judgment) (at the penalty stage a jury considers the character and propensities of a defendant in order to make a "unique, individualized judgment regarding the punishment that a particular person deserves.").

219 W.Va. at 752, 639 S.E.2d at 844.

Further, in a dissenting opinion to *Schofield v. West Virginia Department of Corrections*, 185 W.Va. 199, 406 S.E.2d 425 (1991) (Workman, J., dissenting), the following rationale for a bifurcated proceeding was set forth:

a bifurcated hearing on the issue of mercy would not only permit the defendant a far broader latitude in presenting to the jury full information concerning the defendant's life and circumstances and any mitigating evidence in an effort to obtain the balm of mercy. It would also permit the state an opportunity to present any information at its disposal as to the propriety (or lack thereof) of a grant of mercy. If a particular defendant has an egregious criminal history or a marked propensity for violence, for example, that would also be an appropriate factor for the jury to consider. The determination of whether a defendant should receive mercy is so crucially important that justice for both the state and defendant would be best served by a full presentation of all relevant circumstances without regard to strategy during trial on the merits.

*Id.* at 207, 406 S.E.2d at 433.

Just recently, the Court in *State ex rel. Dunlap v. McBride*, 225 W.Va. 192, 691 S.E.2d 183 (2010), addressed the appellant's arguments stemming from the denial of his petition for habeas corpus relief that the underlying criminal trial for first degree murder [20] was improperly bifurcated and that evidence was improperly admitted during the penalty phase.[21] The trial court in *Dunlap* ruled, prior to trial, that during the guilt phase of trial the State could present evidence in its case-in-chief that the appellant previously tried to slash the throat of his former wife, Betty Yates, and that he was incarcerated for over two years for stabbing his former wife. *Id.* at 200, 691 S.E.2d at 191.

Once the trial began, the State moved the court to introduce additional prior bad acts by the defendant against Ms. Yates. *Id.* The trial court denied the motion as untimely Rule 404(b) evidence. *Id.*; see W. Va. R. Evid. 404(b). The State then moved the court to bifurcate the trial so that the additional bad acts could be used during the sentencing phase. *Id.* at 200–01, 691 S.E.2d at 191–92. The trial court initially denied the motion; however, once the defendant's former wife began to testify, the State moved

---

limitations of the prosecution in rebuttal or impeachment. However, the opportunity for prosecution rebuttal or impeachment in a bifurcated mercy phase is not authorization for the prosecution to use unfairly prejudicial, extraneous, remote, or inflammatory evidence—even in rebuttal or impeachment.

*Id.* This cautionary language in *Rygh*, however, is simply advising trial courts that the provisions of West Virginia Rules of Evidence 401 and 403 are applicable to evidence admitted during the mercy phase. Significantly, in *Rygh*, the Court upheld the admissibility of a copy of the defendant's juvenile records by the State to cross-examine the defendant's mother on her assertions that the defendant was a "good kid." 206 W.Va. at 298, 524 S.E.2d at 450. Despite the assertions, the juvenile records showed that the defendant's mother had filed a petition for delinquency against the defendant. *Id.*

**20.** The appellant was accused of killing his former girlfriend by slashing her throat. 225 W.Va. at 197, 691 S.E.2d at 188.

**21.** The Court in *Dunlap* did not address the present issue regarding whether the State or the defendant proceeds first in a bifurcated mercy phase trial, because it was not raised. The defendant in *Dunlap* also did not raise issues relative to the scope of evidence that would be admissible in the penalty phase.

the trial court again to bifurcate. The trial court took the State's motion under advisement. *Id.* at 201, 691 S.E.2d at 192. After the defendant put on his case-in-chief, the State called rebuttal witnesses. The State again moved the trial court to bifurcate the trial. The trial court ultimately granted the State's motion and, in so doing, gave the defendant several days to prepare for the sentencing hearing before the jury. *Id.*

The Court upheld the trial court's ruling, finding that the decision to bifurcate was within the trial court's discretion pursuant to the Court's decision in *LaRock,* 196 W.Va. at 299, 470 S.E.2d at 618, Syl. Pt. 4 ("A trial court has discretionary authority to bifurcate a trial and sentencing in any case where a jury is required to make a finding as to mercy."). The Court found that

> [i]t is clear that the *LaRock* factors are concerned with a party being able to present evidence for sentencing that may not be admissible on the merits of a prosecution. In this case, *the State had a considerable amount of additional bad acts evidence involving Mr. Dunlap that may not have been admissible during the guilt phase, even if the State had timely brought the evidence to the court's attention. However, this evidence was highly relevant as to the decision of whether Mr. Dunlap should receive mercy and obtain a sentence that would allow him to be eligible for parole.* Ultimately, we agree with the trial court that "there is no evidence that would lead [us] to conclude that the bifurcation herein was constitutional error." More importantly, Mr. Dunlap has not articulated any plausible prejudicial effect from the bifurcation.

*Dunlap,* 225 W.Va. at 201, 691 S.E.2d at 192 (emphasis added).

Further, the defendant argued that the State improperly was allowed to introduce evidence of other bad acts including numerous incidents of violent conduct by the defendant toward his former wife and their children during the penalty phase without the trial court conducting a *McGinnis* hearing. *Id.* The Court found no error, stating

> Mr. Dunlap has failed to cite to any decision of this Court where we have re-

quired a *McGinnis* hearing for sentencing purposes only. As a general matter, "[t]he rules of evidence, including Evid. R. 404(b) regarding 'other acts,' do not strictly apply at sentencing hearings." *State v. Combs,* No. CA2000–03–047, 2005 WL 941133, at *2 (Ohio Ct.App.2005). *See Patton v. State,* 25 S.W.3d 387, 392 (Tex.App. 2000)("It has been held that Rule 404(b) does not apply to the penalty or punishment phase of a bifurcated trial."). Moreover, "[a] trial court has wide discretion in the sources and types of evidence used in determining the kind and extent of punishment to be imposed. And a sentencing court is not restricted by the federal constitution to the information received in open court." *Elswick v. Holland,* 623 F.Supp. 498, 504 (S.D.W.Va.1985) (citations omitted). Therefore, we find this issue to be without merit.

225 W.Va. at 202, 691 S.E.2d at 193.

■ Based upon the foregoing, the Court holds that the type of evidence that is admissible in the mercy phase of a bifurcated first degree murder proceeding is much broader than the evidence admissible for purposes of determining a defendant's guilt or innocence. Admissible evidence necessarily encompasses evidence of the defendant's character, including evidence concerning the defendant's past, present and future, as well as evidence surrounding the nature of the crime committed by the defendant that warranted a jury finding the defendant guilty of first degree murder, so long as that evidence is found by the trial court to be relevant under Rule 401 of the West Virginia Rules of Evidence and not unduly prejudicial pursuant to Rule 403 of the West Virginia Rules of Evidence.

Finally, regarding whether the defendant or the State would first present evidence to the jury, as previously mentioned in *Rygh,* the Court indicated that "a defendant would ordinarily proceed first in any bifurcated mercy phase." 206 W.Va. at 297 n. 1, 524 S.E.2d at 449 n. 1. West Virginia Rule of Evidence 611(a) offers additional guidance on this issue as follows:

> The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to

(1) make the interrogation and presentation effective for the ascertainment of the truth; (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

Further, just recently, in syllabus point two of *State v. Fields*, No. 34746, 225 W.Va. 753, 696 S.E.2d 269 (2010), the Court held that "[t]o safeguard the integrity of its proceedings and to insure the proper administration of justice, a circuit court has inherent authority to conduct and control matters before it in a fair and orderly fashion."

▮ Under the provisions of West Virginia Code § 62–3–15,

[i]f the person indicted for murder is found by the jury guilty thereof, and if the jury find in their verdict that he or she is guilty of murder of the first degree, or if a person indicted for murder pleads guilty of murder of the first degree, he or she shall be punished by imprisonment in the penitentiary for life. . . .

*Id.*; *see* W. Va.Code § 61–2–2 (2005)("Murder of the first degree shall be punished by confinement in the penitentiary for life."). Given that under the foregoing statute, the punishment of life imprisonment upon conviction for first degree murder is fixed unless the jury, in its discretion, recommends mercy, it logically follows that the defendant should generally go first in offering argument and evidence to the jury in his or her quest to show the jury why it should recommend mercy. *See id.*; W. Va.Code § 62–3–15. Thereafter, the State would be allowed to offer any impeachment or rebuttal evidence as warranted by evidence offered by the defendant, including, but not limited to, evidence surrounding the nature of crime committed, as well as evidence of other bad acts. The defendant then would have the last opportunity to offer any evidence to refute that offered by the State, and have the last argument to the jury before it would make the mercy determination.

▮ The Court, therefore, now holds that in the mercy phase of a bifurcated first degree murder proceeding, the defendant will ordinarily proceed first; however, the trial court retains the inherent authority to conduct and control the bifurcated mercy proceeding in a fair and orderly manner.

## IV. Conclusion

Having answered the certified questions herein, this case is dismissed from the docket of this Court.

Certified questions answered.

Justice KETCHUM dissents and reserves the right to file a dissenting opinion.

KETCHUM, J., dissenting:

I dissent from the majority's opinion for two reasons.

First, the statute pertaining to the verdict and sentencing in murder cases, *W.Va.Code*, 62–3–15 [1965], does not provide for bifurcated trials. The statute speaks of one trial by one jury. It simply says that if a person is indicted for murder, the jury must (1) decide if the person "is guilty of murder of the first degree or second degree," and (2) if the person is adjudged guilty of murder of the first degree, "the jury may, in their discretion, recommend mercy[.]" There is nothing in the statute clearly saying a trial must be split into two parts, or worse, that the two parts can be tried by two separate juries.

I concede that the statute could be read—if it is constitutionally necessary for a fair trial—to allow bifurcated trials. And that brings me to the second reason for my dissent: I don't believe bifurcation gives criminal defendants a fair trial.

When this Court adopted discretionary bifurcation of the penalty and mercy phases of murder trials in 1996,[1] it adopted an idyllic academic dream into our jurisprudence. The problem is that, in reality, it created a procedural nightmare that allows the State to introduce egregious, formerly inadmissible, "bad character" evidence at the penalty phase of the trial.

---

1. *See* Syllabus Point 4, *State v. LaRock*, 196 W.Va. 294, 470 S.E.2d 613 (1996) ("A trial court has discretionary authority to bifurcate a trial and sentencing in any case where a jury is required to make a finding as to mercy.").

In a unitary trial, it is the option of the defendant as to whether evidence of the defendant's good character will be introduced at trial. If the defendant introduces character evidence, then the door is opened to the prosecutor to rebut that evidence with something to show the defendant's bad character.

The lofty, ivory tower theory behind bifurcation is that it would help defendants in their quest to introduce evidence of good character. What happens in reality is that prosecutors encourage and seek bifurcation, and then use that bifurcated system to *initiate* the introduction of character evidence— before the defendant ever opens the door by introducing any character evidence. What I believe bifurcation has really done is assist West Virginia's prosecutors in their quest to bury defendants in irrelevant, misleading evidence of the defendant's bad character. Prosecutors proffer witnesses who know the defendant kicked a dog 20 years ago, or saw the defendant jaywalk on the way to the courthouse, or heard the defendant say an unkind word to his mother, and then argue to the jurors, "Is this the kind of person we ever want walking our streets?"

Unitary trials worked without a hitch until *LaRock* was decided in 1996. Since then, I believe first degree murder trials have become a legal nightmare. The facts of the case *sub judice* (and the cases mentioned in footnote 2) are typical examples. I have tried many unitary murder trials as a lawyer, and I never saw the procedural or evidentiary problems like we are now experiencing. The jury that heard the facts surrounding the crime determined mercy, not another jury many years later.

My practical experience taught me that one juror could shift the verdict from a lifetime-in-prison murder verdict, to a verdict of murder with mercy where the defendant had a shot at release in the future. Under a bifurcated system, where separate juries are adjudicating guilt and the penalty, that leverage by the defendant is largely lost. The second, penalty-phase jury begins knowing the defendant is guilty of murder, and the only question they must unanimously resolve is whether the defendant is entitled to mercy. The defendant begins this second phase essentially judicially stripped of his or her constitutional "benefit of the doubt," which is exactly the opposite what is supposed to occur under *W.Va.Code,* 62–3–15.

In *LaRock* and its progeny, the Court obviously was trying to ensure that defendants got a fair trial. The problem is, I think the bifurcated process that resulted is pretty much ensuring that defendants *aren't* getting a fair trial.

Accordingly, I respectfully dissent.