# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Royce Dean Burdette,**
**Petitioner Below, Petitioner**

**vs.)  No. 19-0526** (Greenbrier County 01-C-94)

**Donnie Ames, Superintendent,**
**Mt. Olive Correctional Complex,**
**Respondent Below, Respondent**

**FILED**
**December 7, 2020**
**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Royce Dean Burdette, by counsel Matthew Brummond, appeals the Circuit Court of Greenbrier County's May 6, 2019, order denying his petition for a writ of habeas corpus. Respondent Donnie Ames, Superintendent, Mt. Olive Correctional Complex, by counsel Andrea Nease-Proper, filed a response to which petitioner submitted a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

On October 5, 1997, the Greenbrier County Sheriff's Department was asked to perform a health and welfare check on Robin Christy Bradley after her parents and son had been unable to reach her for several days. The sheriff's department was unable to locate her, and she was determined to be a missing person. Prior to her disappearance, Ms. Bradley and petitioner were living together in an apartment in McRoss, Greenbrier County. According to the circuit court, there was ample evidence that petitioner and Ms. Bradley were experiencing strain in their relationship and that she planned to kick petitioner out of the apartment, including asking the landlord to change the locks. The circuit court also found that evidence was presented that Ms. Bradley intended to testify against petitioner on a felony charge then-pending against him. On October 18, 1997, Ms. Bradley's body was found in the trunk of a junked car near the apartment the couple shared.[1]

---

[1]Petitioner was later convicted of four separate robberies in Raleigh and Summers Counties that occurred between October 5 and October 19, 1997, which established his whereabouts for part of the time that Ms. Bradley was believed to be missing.

1

On October 19, 1997, petitioner was a passenger in a vehicle driven by Jason Hurd when they were involved in a traffic stop. During that stop, petitioner used a knife to threaten Mr. Hurd before eventually stabbing himself with that knife. He was transported to the hospital for treatment. While hospitalized, law enforcement officers questioned him about Ms. Bradley. According to trial testimony from those officers, petitioner stated during that interview that he stabbed himself because he had seen on the news that Ms. Bradley was dead and he claimed that he could not live without her. However, according to the circuit court, the evidence established that no news broadcast had reported the discovery of Ms. Bradley's body prior to petitioner's hospitalization.

On June 2, 1998, petitioner was indicted for Ms. Bradley's murder, and on February 2, 1999, the grand jury returned a superseding indictment for that murder. On March 30, 1999, petitioner's criminal trial began, but a mistrial was declared on that same date. The matter again proceeded to trial on May 11, 1999, and after a half-day trial, petitioner was found guilty of murder. According to the circuit court, the jury did not recommend mercy and petitioner was sentenced to life imprisonment without the possibility of parole. Petitioner appealed his conviction to this Court, but that appeal was refused.

Petitioner filed his first petition for a writ of habeas corpus on May 15, 2001, as a self-represented litigant. After the appointment of counsel, petitioner filed an amended petition for a writ of habeas corpus on July 19, 2007. Counsel was later substituted, and a second amended petition was filed on November 19, 2013. On May 6, 2015, the circuit court held an evidentiary hearing, and on June 30, 2016, petitioner filed an amended brief in support of the second amended petition. Respondent submitted a response and petitioner a reply. Another hearing was held on August 15, 2017, during which petitioner submitted his *Losh* list. In its resulting order, the circuit court found that petitioner preserved numerous grounds for relief. In its fifty-six page order, the circuit court addressed each of those contentions. However, a claim of ineffective assistance of counsel related to the failure to seek a bifurcated trial is the only ground relevant to petitioner's sole assignment of error before this Court.

In addressing counsel's failure to seek a bifurcated trial, the habeas court noted that petitioner testified during his omnibus hearing that he was never advised of the possibility of bifurcating his trial to separate the guilt and penalty phases. He also testified that if he had known that bifurcation was an option, he would have requested bifurcation in order to call witnesses to testify as to his good character during the sentencing portion. Petitioner's trial counsel testified that he did not have any specific recollection of discussions with petitioner prior to trial regarding possible bifurcation. The habeas court found that while trial counsel testified in his deposition (on August 3, 2011) that it was his standard practice to discuss the possibility of bifurcation with his clients, neither he nor his co-counsel specifically contradicted petitioner's claim that petitioner had never been advised of the possibility of bifurcation. The circuit court discussed the fact that the decision of whether to seek bifurcation involves substantial considerations of trial strategy and tactics "as a party can have much to gain and much to lose as a result of bifurcation." Without citing law, the circuit court found that trial counsel "should consult with his or her client relative to the possibility of requesting bifurcation, when that client is facing a charge of murder in the first degree." It went on to find, however, that the mere fact that trial counsel fails to discuss a possible request for bifurcation with a client does not in itself entitle that client to habeas corpus relief, where the decision not to seek bifurcation represents a reasonable strategic choice. *See*, e.g. *State*

*ex rel. Kitchen v. Painter*, 226 W. Va. 278, 290 n.11, 700 S.E.2d 489, 501 n.11 (2010).

The circuit court found that

[i]n describing character evidence that he would have offered in the mercy phase of the trial, had the trial been bifurcated, [p]etitioner did not identify any compelling evidence that would have likely changed the outcome of this case. Instead, he spoke of persons who might testify generally of his good character or that he was a good worker and employee. [] If [p]etitioner's criminal trial had been bifurcated, he could have presented character witnesses at the mercy phase, without risking the State's presentation of evidence of his bad character during the guilt phase of the trial. However, if the trial had been bifurcated, the State would have been free to introduce evidence of [p]etitioner's extensive criminal history, including details of the crime spree in which he engaged shortly before his arrest for Ms. Bradley's murder. That evidence would almost certainly have outweighed any favorable character evidence that has been identified by [p]etitioner and that could have been presented by the defense at trial. On balance, then, it is highly unlikely that the character evidence described by [p]etitioner in his testimony would have persuaded the jury to recommend mercy, particularly if the jury was also presented with evidence relative to the full scope of [p]etitioner's criminal history, including his conviction for four separate counts of aggravated robbery, which were committed only days before his arrest for Ms. Bradley's murder. [] Although trial counsel should have consulted with [p]etitioner regarding a possible request for bifurcation, counsel's decision not to seek bifurcation was based on strategic considerations, and [p]etitioner has failed to demonstrate that no reasonably qualified defense attorney would have failed to request bifurcation under the circumstances of [p]etitioner's case. [] Petitioner has failed to establish that the result in his criminal case would have been different, had his counsel requested a bifurcated trial.

The circuit court concluded that petitioner's claim failed both prongs of the *Strickland*[2] test and is, therefore, without merit. It further found that petitioner was not entitled to relief as to any of the grounds he waived. The circuit court determined that petitioner is not entitled to relief and denied petitioner's second amended petition for writ of habeas corpus. Petitioner appeals that May 6, 2019, order denying habeas corpus relief.

As we have held,

[i]n reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Mathena v. Haines*, 219 W. Va. 417, 633 S.E.2d 771 (2006).

---

[2] *Strickland v. Washington*, 466 U.S. 668 (1984).

On appeal, petitioner sets forth a single assignment of error: Sixth Amendment Counsel Clause errors are structural if the lawyer overrules the client's decision concerning the objectives of representation, but the *Strickland* standard for ineffective assistance governs counsel's tactical decisions to achieve those objectives. The habeas court below found that trial counsel chose not to present a mitigation case through a bifurcated trial without discussing the decision with petitioner. In support of his argument, petitioner asserts that the defendant exercises sole discretion over decisions that affect his or her personal goals of representation, whereas counsel, as a matter of trial management, may decide the means to achieve those ends for the client.

Petitioner relies heavily upon *McCoy v. Louisiana*, 138 S.Ct. 1500 (2018), a case decided approximately nineteen years after petitioner's conviction. He asserts that in *McCoy*, trial counsel overrode the defendant's decision to seek an acquittal for murder to argue a lesser degree as mitigation. The Louisiana Supreme Court affirmed McCoy's conviction because the decision concerned trial management and was a reasonable strategy. However, the United States Supreme Court concluded that whether to seek acquittal or mitigation is not within counsel's discretion. *Id.* at 1505-1507. The Supreme Court found that the so-called strategy was error and violated the defendant's right to counsel, rather than effective assistance of counsel. He contends that his case presents the same essential issue as *McCoy* because in both the decision was whether to pursue outright acquittal or seek mitigation. While in *McCoy* counsel overrode the defendant's decision and presented a mitigation defense, here petitioner's trial counsel made the decision to forego a mitigation defense in a separate penalty phase. He further asserts that whether to use a separate proceeding to call friends and family as character witnesses, experts to testify about the details of one's psyche, and to plead mercy is a highly personal decision. However, a defendant cannot make the decision unless counsel communicates the option.

Without citing authority, petitioner argues that the impact that bifurcation has on the trial is "inherently unknowable and immeasurable." Petitioner contends that no legal standards govern a jury's mercy decision in the first place so there are no legal standards to measure it after the fact. He asserts that as this Court found in *LaRock*,[3] evidence that may be admissible in the mercy phase may not be admissible in a unitary trial. Petitioner argues that the decision to request bifurcation fundamentally changes the structure of the trial itself rather than affecting the fairness of proceedings within that structure. Thus, petitioner contends that his counsels' unilateral decision on the issue, without discussing it with petitioner, was a structural error.

In *Lind v. Ames*, No. 18-0701, 2019 WL 6048907, at *6-7 (W. Va. Nov. 15, 2019) (memorandum decision), this Court addressed *McCoy*, as follows:

> In *McCoy*, the Supreme Court held that "a defendant has the right to insist that counsel refrain from admitting guilt, even when counsel's experienced-based view is that confessing guilt offers the defendant the best chance to avoid the death penalty." 138 S.Ct. at 1505. . . . While the record reflects that trial counsel's strategy was to focus the defense on the charges of first-degree murder and first-degree robbery given their severity, petitioner points to nothing to establish that his trial attorney conceded, over his objection, that he committed forgery of a credit card at

---

[3] *State v. LaRock*, 196 W. Va. 294, 470 S.E.2d 613 (1996).

4

the fast food restaurant. Therefore, based on our review of the record, we reject petitioner's argument that the Supreme Court's decision in *McCoy* represents a change in the law that is favorable to him.

*Lind* at *6-7.

While this is not an appeal of the denial of a motion for bifurcation, those standards are relevant to this Court's consideration of petitioner's single assignment of error. As we recently found,

> "[a] trial court has discretionary authority to bifurcate a trial and sentencing in any case where a jury is required to make a finding as to mercy." *LaRock*, 196 W.Va. at 299, 47S.E.2d at 618, syl. pt. 4. The *LaRock* Court outlined factors for a trial court to consider when ruling on a motion to bifurcate:
>
>> Although it virtually is impossible to outline all factors that should be considered by the trial court, the court should consider when a motion for bifurcation is made: (a) whether limiting instructions to the jury would be effective; (b) whether a party desires to introduce evidence solely for sentencing purposes but not on the merits; (c) whether evidence would be admissible on sentencing but would not be admissible on the merits or vice versa; (d) whether either party can demonstrate unfair prejudice or disadvantage by bifurcation; (e) whether a unitary trial would cause the parties to forego introducing relevant evidence for sentencing purposes; and (f) whether bifurcation unreasonably would lengthen the trial.
>
> *Id.,* syl. pt. 6. The burden of convincing the circuit court to bifurcate the trial rested with the petitioner: "The burden of persuasion is placed upon the shoulders of the party moving for bifurcation. A trial judge may insist on an explanation from the moving party as to why bifurcation is needed." *Id.,* syl. pt. 5, in part.

*State v. Farley*, 238 W. Va. 596, 614, 797 S.E.2d 573, 592 (2017).

As the circuit court pointed out, if petitioner had chosen to bifurcate his trial, the State could have introduced evidence of petitioner's criminal history and evidence of his "bad character." This Court previously set forth the following:

> The type of evidence that is admissible in the mercy phase of a bifurcated first[-]degree murder proceeding is much broader than the evidence admissible for purposes of determining a defendant's guilt or innocence. Admissible evidence necessarily encompasses evidence of the defendant's character, including evidence concerning the defendant's past, present and future, as well as evidence surrounding the nature of the crime committed by the defendant that warranted a jury finding the defendant guilty of first[-]degree murder, so long as that evidence is found by the trial court to be relevant under Rule 401 of the West

> Virginia Rules of Evidence and not unduly prejudicial pursuant to Rule 403 of the West Virginia Rules of Evidence.

Syl. Pt. 7, *State v. McLaughlin*, 226 W.Va. 229, 700 S.E.2d 289 (2010). In its order, the circuit court found that "[i]n describing character evidence that he would have offered in the mercy phase of the trial, had the trial been bifurcated, [p]etitioner did not identify any compelling evidence that would have likely changed the outcome of this case." It does not appear that petitioner contests that finding. While this Court agrees that it would have been preferable for petitioner's counsel below to fully inform petitioner of the option to request bifurcation of his trial, under the specific facts of this case, we find that the circuit court did not err in denying petitioner's petition for writ of habeas corpus.

Affirmed.

**ISSUED:** December 7, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice Evan H. Jenkins

**DISSENTING:**

Justice Margaret L. Workman
Justice John A. Hutchison

Justices Workman and Hutchison would set for oral argument in accordance with Rule 20 of the West Virginia Rules of Appellate Procedure.

6