STATE OF WEST VIRGINIA

*v.*

NATHAN VAN ISLER

(No. 14931)

Decided November 3, 1981.

*Fitzsimmons & Parsons and Robert P. Fitzsimmons, Gold & Khourney and David R. Gold,* for appellant.

*Chauncey H. Browning,* Attorney General, *and Timothy Huffman,* Assistant Attorney General, for appellee.

McHUGH, JUSTICE:

This is an appeal from a final order of the Circuit Court of Ohio County, entered on December 10, 1979, which sentenced the appellant, Nathan Van Isler, to serve one to

15 years in the West Virginia Penitentiary for the crime of breaking and entering a dwelling house. The appellant assigns the trial court's admission of fingerprints taken when he was a juvenile, and testimony based thereon, into evidence at his trial as error.

The record discloses that the appellant had been fingerprinted on three occasions by the Wheeling Police Department. At the time he was first fingerprinted by the Wheeling Police Department on April 26, 1972, Nathan Van Isler was a juvenile. The record does not show the reason for which the appellant was fingerprinted at that time, nor does it show the disposition of any proceeding that may have resulted from that occasion when his fingerprints were obtained.

The breaking and entering for which the appellant was convicted occurred on September 12, 1978. On September 23, 1978, the Wheeling Police Department submitted five latent fingerprints, taken from the scene of the breaking and entering, to the Federal Bureau of Investigation for comparison with the fingerprints of the appellant that had been taken on April 26, 1972.

Prior to trial the appellant moved *in limine* to prohibit the State from introducing the juvenile comparison fingerprint evidence at trial. The motion was overruled. The motion was renewed at trial when the State offered the April 26, 1972, fingerprint card as an exhibit. The motion was again overruled.

On this appeal the appellant argues that the trial court's admission of the juvenile comparison fingerprints, and testimony based on them, was error because such use of the fingerprint card violates *W. Va. Code*, 49-7-3 [1941], and 49-5-17 [1978], when those two statutes are read *in pari materia*. The State, on this appeal, argues that the above referred to statutory sections should not be read *in pari materia* and that if there was error below it was harmless.

*W. Va. Code*, 49-5-17 [1978], is part of a comprehensive legislative scheme relating to the handling, disposition and rehabilitation of juvenile offenders. Part of the pur-

pose and intent behind that scheme is to protect the anonymity of juvenile offenders and to assure that they are accorded a fresh start, unhaunted by past trouble, when they reach their majority. *See, State ex rel. Daily Mail Publishing Co. v. Smith,* 161 W. Va. 684, 248 S.E.2d 269 (1978), *aff'd,* 443 U.S. 97, 99 S.Ct. 2667, 61 L.Ed.2d 399 (1979). This purpose runs throughout Chapter 49 of the *Code.* The Legislature has used direct forceful language to effectuate this purpose. *W. Va. Code,* 49-7-1 [1978], for example, provides in part: "All records of the state department, the court and its officials, law-enforcement agencies and other agencies or facilities concerning a child as defined in this chapter shall be kept confidential and shall not be released. . . ."

The system designed to assure the confidentiality of juvenile records is implemented by *W. Va. Code,* 49-5-17 [1978]. Subsection (a) of that section provides that juvenile records are expunged as a matter of law. That subsection specifically lists "law-enforcement files and records, [and] fingerprints" as being expunged. Subsection (a) also provides that the records are to be turned over to the circuit court and physically segregated.[1] Subsection (b) provides that the records are to be marked and sealed. Both subsections (a) and (c) state that juvenile records are to be confidential and subject to disclosure only upon court order. Subsection (d) lists the limited instances when a court may order disclosure of these confidential records.[2]

---

[1] In this case the Wheeling Police Department should not have been in possession of the fingerprint card as it was "expunged by operation of law." *W. Va. Code,* 49-5-17(a) [1978]. The card should have been turned over to the circuit court for marking, sealing and segregation in compliance with the statute prior to the time when this case arose.

[2] *W. Va. Code,* 49-5-17(d) [1978], provides:

(d) Notwithstanding this or any other provision of this Code to the contrary, juvenile records and law-enforcement records shall not be disclosed or made available for inspection, except that the court may, by written order pursuant to a written petition, permit disclosure or inspection when:

(1) A court having juvenile jurisdiction has the child before it in a juvenile proceeding;

*W. Va. Code,* 49-5-17(d) [1978], does not authorize a court to permit juvenile law enforcement records to be used in a criminal case as evidence in chief in the State's case. We will not expand upon the legislatively created exceptions to the legislatively imposed general rule of confidentiality of juvenile records. *Jeffery v. McHugh,* ___ W. Va. ___, 273 S.E.2d 837 (1981).

We, therefore, hold that the use of a juvenile fingerprint card, or testimony derived from it, as evidence in a criminal trial of the person fingerprinted after that person has become an adult is reversible error because such use of juvenile records is not permitted by *W. Va. Code,* 49-5-17 [1978]. Such a result is necessary to effectuate the legislative intent underlying that section that no juvenile record be used for any reason other than those specifically provided for by the Legislature. We do not consider it necessary to reach the appellant's argument based on *W. Va. Code,* 49-7-3 [1941], which deals with evidence given in any juvenile cause or proceeding, or the State's harmless error argument.

The appellant, in his prayer for relief, asks that we bar re-trial under *State v. Frazier,* ___ W. Va. ___, 252 S.E.2d 39 (1979). In that case we held, at Syl. pts. 4 and 5:

4. The Double Jeopardy Clause of the Federal and this State's Constitutions forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding.

5. In order to determine if there is evidentiary insufficiency that will bar a retrial under double

---

(2) A court exercising criminal jurisdiction over the child requests such records for the purpose of a presentence report or other dispositional proceeding;

(3) The child or counsel for the child requests disclosure or inspection of such records;

(4) The officials of public institutions to which a child is committed require such records for transfer, parole or discharge considerations; or

(5) A person doing research requests disclosure, on the condition that information which would identify the child or family involved in the proceeding shall not be divulged.

jeopardy principles, such determination is made upon the entire record submitted to the jury and not upon the residual evidence remaining after the appellate court reviews the record for evidentiary error.

In *State v. Frazier* we noted that the United States Supreme Court, in *Burks v. United States*, 437 U.S. 1, 15, 98 S.Ct. 2141, 2149, 57 L.Ed.2d 1, 12 (1978), distinguished between cases of trial error and cases of evidentiary insufficiency for double jeopardy purposes:

> In short, reversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, *e.g.*, incorrect receipt or rejection of evidence. . . .

*State v. Frazier, supra*, 252 S.E.2d at 51, quoting *Burks v. United States, supra*. We found that *State v. Frazier* involved such trial error and, therefore, a retrial was not barred under double jeopardy principles.

> The present case aptly illustrates the unfairness that can result if the 'evidentiary insufficiency' test is applied by the appellate court after it has ruled inadmissible critical areas of the State's evidence. Here, there were evidentiary points that involved matters of first impression in this State. . . . When the new evidentiary rule is set adversely to [the prosecutor's] position on appeal, he should not be foreclosed from developing on a new trial alternate sources of proof. *State v. Frazier, supra*, 252 S.E.2d at 53.

The case presently before us is very similar to *State v. Frazier* in that the trial error which occurred here was a matter of first impression in this jurisdiction and the basis of our reversal of the trial court is the trial error and not any insufficiency of the evidence at trial. Double jeopardy does not automatically bar retrial where an insufficiency

of evidence results from material being held on appellate review to have been erroneously admitted at trial.[3] We cannot say that the State, on retrial in this case, will be unable to make its proof without regard to the evidence we here hold to be inadmissible. We, therefore, reverse and set aside the verdict rendered below, but we do not exclude the possibility of retrial should the State so elect. The judgment of the Circuit Court of Ohio County is reversed and this case is remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*

---

[3] *Accord, United States v. Mandel,* 591 F.2d 1347, 1373-1374 (4th Cir.), *cert. denied,* 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980); *United States v. Block,* 590 F.2d 535, 543 (4th Cir. 1978); *People v. Sisneros,* 606 P.2d 1317, 1319 (Colo. App. 1980); *Hall v. State,* 244 Ga. 86, 93-94, 259 S.E.2d 41 (1979); *Irons v. State,* 397 N.E.2d 603, 605-606 (Ind. 1979); *Mulry v. State,* 399 N.E.2d 413, 419 (Ind. App. 1980); *Phillips v. Commonwealth,* 600 S.W.2d 485, 486-487 (Ky. App. 1980); *State v. Boone,* 284 Md. 1, 15-17, 393 A.2d 1361 (1978); *DiPasquale v. State,* 43 Md. App. 574, 579, 406 A.2d 665 (1979); *State v. Wood,* 596 S.W.2d 394, 397-399 (Mo. 1980) (en banc); *Ex parte Duran,* 581 S.W.2d 683, 684-686 (Tex Crim. App. 1979); *State v. Lamorie,* 610 P.2d 342, 347 (Utah 1980). *Contra, In Re M.L.H.,* 399 A.2d 556, 558-559 (D.C. 1979); *State v. Bannister,* 60 Haw. 658, 660-661, 594 P.2d 133 (1979); *State v. Alexander,* 281 N.W.2d 349, 354 (Minn. 1979); *Sloan v. State,* 584 S.W.2d 461, 472 (Tenn. Crim. App. 1979).