No. 14-0937, *State of West Virginia v. Tyler G.*

**FILED**

October 7, 2015

**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

Justice Ketchum, dissenting:

I dissent because this case contains three serious prosecutorial errors. The cumulative effect of these three prejudicial errors resulted in an unfair trial.

First, the defendant, a nineteen-year-old boy, was forced to go to the police station on two occasions. He was questioned for ten to twelve hours by six different police officers during this two-day period. The record is clear that this lengthy grilling was to elicit a confession—why else would a nineteen-year-old boy be questioned for ten to twelve hours by six different police officers?

The circuit court failed to properly weigh the factors outlined by our Court in *State v. Farley*, 192 W.Va. 247, 452 S.E.2d 50 (1994), to determine whether the defendant's confession was made "voluntarily."[1] The *Farley* factors demonstrating that the confession was made involuntarily are:

(1) The defendant was nineteen years old;

(2) The defendant only had a 10th grade education;

(3) The defendant was of lower intelligence;

---

[1] This Court, in Syllabus Point 1 of *State v. Vance*, 162 W.Va. 467, 250 S.E.2d 146 (1978), that, "The State must prove, at least by a preponderance of the evidence, that confessions or statements of an accused which amount to admissions of all or a part of an offense were voluntary before such may be admitted into the evidence of a criminal case.' Syl. pt. 5, *State v. Starr*, W.Va., 216 S.E.2d 242 (1975).'"

1

(4) The ten to twelve hours of grilling, by six different police officers, over a two-day period, was an exceptionally long time to interrogate a nineteen-year-old boy with a 10th grade education.

As a result of the involuntary confession, the nineteen-year-old boy was sentenced to 25 to 100 years in the penitentiary.

The second prejudicial error was the unsealing of the defendant's juvenile records. The prosecutor's office unsealed the defendant's juvenile records without providing notice to the trial judge or to the defendant. The chief law enforcement officer of Hancock County, the prosecutor's office, illegally opened the defendant's sealed juvenile records without the circuit court's permission. Our law requires that before a juvenile record may be unsealed, there first must be a hearing and approval by a circuit judge. *See State v. Rygh*, 206 W.Va. 295, 524 S.E.2d 447 (1999). The result of this illegal unsealing of the defendant's juvenile record was that the nineteen-year-old boy got 25 to 100 years in the penitentiary, while the prosecutor's office doesn't even get scolded for its illegal activity.

The third prejudicial error occurred when a police officer testifying for the State blurted out that the defendant took a polygraph exam. After six years on the bench, I've seen a steady parade of prosecution witnesses who "inadvertently" blurt out inadmissible testimony. Once the jury heard the defendant took a polygraph test, with no explanation of the results, the jury will assume the defendant lied. The prosecutor's explanation for this inadmissible testimony was, "Sorry Judge, the experienced police officer just forgot and blurted out the highly prejudicial remarks! Won't happen again."

2

This Court has previously addressed an experienced police officer "inadvertently" testifying about a polygraph exam. In *State v. Chambers*, 194 W.Va. 1, 3, 459 S.E.2d 112, 114 (1995), the Court stated:

> Particularly suspect is the fact that neither Police Chief Miller, nor State Fire Marshall Investigator Richie, was naive or inexperienced as a witness such that reference to polygraph testing might have inadvertently been made. In fact, the transcript reveals that the polygraph evidence came out during questioning by the State, in answers that were not particularly responsive to the questions which preceded them. It seems highly unlikely that both of these witnesses innocently injected a reference to polygraph testing.
>
> In any event, the admission of Mrs. Chambers' refusal to take a polygraph test was plain error. We hold that reference to an offer or refusal by a defendant to take a polygraph test is inadmissible in criminal trials to the same extent that polygraph results are inadmissible.

In the present case, once the inadmissible polygraph testimony came in, the damage was done—a cautionary instruction from the court did not undo the prejudice to the defendant.

The cumulative effect of these errors prevented the defendant from receiving a fair trial. These errors completely negated the evidence that the young girl just as likely got the disease from her infected mother.

For the foregoing reasons, I respectfully dissent.