IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2016 Term

_____

No. 15-0028

_____

DAYTON SCOTT LISTER,
Petitioner

v.

DAVID BALLARD, Warden,
Mount Olive Correctional Complex,
Respondent

FILED

March 2, 2016

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

_____

Appeal from the Circuit Court of Marion County
The Honorable Michael J. Aloi, Judge
Case No. 14-C-154

AFFIRMED

_____

Submitted: February 23, 2016
Filed: March 2, 2016

Lonnie C. Simmons, Esq.
DiTrapano, Barrett, DiPiero,
McGinley & Simmons, PLLC
Charleston, West Virginia
Counsel for the Petitioner

Patrick Morrisey
Attorney General
David A. Stackpole
Assistant Attorney General
Charleston, West Virginia
Counsel for the Respondent

CHIEF JUSTICE KETCHUM delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.      "'A motion for a new trial on the ground of the misconduct of a jury is addressed to the sound discretion of the court, which as a rule will not be disturbed on appeal where it appears that defendant was not injured by the misconduct or influence complained of.  The question as to whether or not a juror has been subjected to improper influence affecting the verdict, is a fact primarily to be determined by the trial judge from the circumstances, which must be clear and convincing to require a new trial, proof of mere opportunity to influence the jury being insufficient.' Syllabus Point 7, *State v. Johnson*, 111 W.Va. 653, 164 S.E. 31 (1932)."  Syllabus Point 1, *State v. Sutphin*, 195 W.Va. 551, 466 S.E.2d 402 (1995).

2.      "In any case where there are allegations of any private communication, contact, or tampering, directly or indirectly, with a juror during a trial about a matter pending before the jury not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial with full knowledge of the parties; it is the duty of the trial judge upon learning of the alleged communication, contact, or tampering, to conduct a hearing as soon as is practicable, with all parties present; a record made in order to fully consider any evidence of influence or prejudice; and thereafter to make findings and conclusions as to whether such communication, contact, or tampering was prejudicial to the defendant to the extent that he has not

received a fair trial." Syllabus Point 2, *State v. Sutphin*, 195 W.Va. 551, 466 S.E.2d 402 (1995).

3.      "An instruction outlining factors which a jury should consider in determining whether to grant mercy in a first degree murder case should not be given." Syllabus Point 1, *State v. Miller*, 178 W.Va. 618, 363 S.E.2d 504 (1987).

Chief Justice Ketchum:

Petitioner Dayton Scott Lister ("Mr. Lister") appeals from the December 23, 2014, order of the Circuit Court of Marion County denying his petition for a writ of habeas corpus. Mr. Lister, who was convicted of first-degree murder, asserts that he is entitled to a writ of habeas corpus due to three errors committed by the trial court. He argues that the trial court erred by 1) refusing to dismiss a juror who overheard a threatening remark related to her role as a juror during the trial, (2) allowing the State to present "sympathy witnesses" during the mercy phase of the bifurcated trial, and (3) failing to provide standards for the jury to consider when determining whether to recommend mercy. After review, we affirm the circuit court's order.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts of the underlying crime are not disputed. On August 10, 2005, Mr. Lister had been drinking alcohol and taking Xanax. He initiated an argument with a group of five strangers, three black men and two white women, who were gathered in front of an apartment building in Marion County, West Virginia. Mr. Lister yelled racial epithets at this group of strangers as he drove by in a sedan. After driving around the block, Mr. Lister returned to the apartment building, parked his car, approached the

1

group, and began arguing with one of the men. At the conclusion of the verbal argument, Mr. Lister walked back to his car and retrieved a .22 caliber rifle.[1] He proceeded to threaten the group of men and women, and struck one of the men with the barrel of his rifle. Mr. Lister then pointed the rifle at one of the women, who pled with him and promised to leave the company of the young men. Mr. Lister walked back to his car and left the scene. Five to ten minutes later, Mr. Lister returned to the apartment building in a pick-up truck, armed with a loaded, twelve-gauge shotgun. Mr. Lister fired at the group from the window of his truck, striking one of the women, eighteen-year-old Krystal Peterson, in the back of the head, instantly killing her. Mr. Lister fled the scene but was apprehended by the police later that morning. During subsequent questioning by the police, Mr. Lister admitted that he had fired the shot that killed Ms. Peterson.

Mr. Lister was indicted for murder in the first degree pursuant to W.Va. Code § 61-2-1 [1991]. Prior to his trial, the State filed a motion to bifurcate the trial, which Mr. Lister opposed. The circuit court granted the State's motion to bifurcate. Mr. Lister's trial began on April 25, 2006. Throughout the course of the trial, Mr. Lister did not contest that he fired the shot that killed Ms. Peterson. Rather, he put on a diminished capacity defense, arguing that because he was drinking and taking Xanax, he did not have the requisite mental state to commit first-degree murder.

---

[1] The .22 caliber rifle was not loaded. The men and women at the apartment building were not aware that the rifle was unloaded.

Three juror issues arose during the trial.[2]  The juror issue that Mr. Lister raises as an assignment of error in the present appeal occurred on April 28, 2006, the final day of the trial.  On that day, Juror Number Three told the bailiff about a remark she overheard at a Dairy Mart the previous night.  The bailiff informed the trial judge that Juror Three wanted to disclose something on the record.  The circuit court questioned Juror Three on the record:

> Juror Three:  After I left here yesterday, I stopped at the Dairy Mart, and my son and I were—my son was in the car. . . . I was in line, and there were a lot of people that were lined up behind me.  I had my hands full.  Behind me, I heard someone say, "There's one of those bitch jurors."  It was a male voice.  I did not turn around.  I did not look.  I did not want them to know I heard what they said.  I paid for my stuff quickly, and as I was paying, I heard him say, "If we take a few of these out, Scoot will go free." ["Scoot" is Mr. Lister's nickname.] I did not turn around.  I was afraid for my son.  I didn't want them—I didn't want to acknowledge that I heard

---

[2] The first juror issue occurred on April 27, 2006, when a juror informed the court that he was an acquaintance of a defense witness who had recently testified.  The juror did not recognize the witness's name when called during *voir dire* because he only knew this witness by the witness's nickname, "Bumper."  After questioning this juror, the State moved to disqualify him.  Counsel for Mr. Lister opposed disqualification, stating there was no proper basis for the motion. The circuit court granted the State's motion and disqualified this juror.

On the same day, another juror reported to the bailiff that Juror Number Six had shared opinions about the case with the other jurors.  After being questioned by the court, Juror Six admitted that she had expressed opinions about the case and stated, "I said I don't believe that it would be first degree murder." The circuit court subsequently dismissed Juror Six.

them.  I took off and left.  I got in my car and I left.  That's all.

The Court:  Okay, let me ask you this.  Do you feel that you can continue to sit on this jury and render a fair and impartial verdict?

Juror Three:  Oh, absolutely.

The Court:  Do you think that would affect your deliberations in any manner whatsoever?

Juror Three:  No. No, not at all.

The circuit court allowed the State and Mr. Lister to question Juror Three about this incident.  Counsel for Mr. Lister asked Juror Three if she had any bias against Mr. Lister because of this incident.  Juror Three replied: "No.  I don't feel that way at all.  I mean, people were—it could have been anybody.  I don't know who it was. . . .  It was just a comment that could have been made by anybody."  Mr. Lister moved to disqualify Juror Three.  The circuit court denied this motion, explaining:

[M]y reason basically is: 1) This woman [Juror Three] was very, very sincere when she said it would not affect her at all.  Secondly, I don't want to establish a precedent whereby defendants or parties in cases can get jurors disqualified by yelling or screaming at them in public.  She says that is not going to affect her.

The jury found Mr. Lister guilty of murder in the first degree at the close of the guilt phase of the trial.  During the subsequent mercy phase, Mr. Lister objected to the State calling the victim's family members to testify about the victim.  The circuit court noted the objection and limited the State's evidence to "four short witnesses."  The State called the victim's stepmother, "best friend," father, and mother.  The testimony from all

4

four of these witnesses was very brief. In essence, each witness was asked two questions: 1) how did you know the victim; and 2) what impact has her death had on your life. At the close of the penalty phase, the jury recommended no mercy. Thereafter, the circuit court imposed a sentence of life without the possibility of parole.

Mr. Lister filed a motion for a new trial on May 8, 2006, asserting that the circuit court erred by failing to dismiss Juror Three, and by bifurcating the trial. On August 24, 2006, the circuit court entered an order denying the motion for a new trial. Mr. Lister filed a petition for appeal with this Court which was denied by order dated June 5, 2007.[3] Next, Mr. Lister filed a petition for writ of certiorari with the United States Supreme Court. The Supreme Court denied certiorari on October 29, 2007. Mr. Lister filed a petition for writ of habeas corpus in the Circuit Court of Marion County on May 20, 2014. The circuit court held an omnibus hearing on September 19, 2014. The circuit court denied the writ of habeas corpus by order entered on December 23, 2014. This appeal followed.

---

[3] Mr. Lister's petition for appeal to this Court argued that the circuit court erred by 1) refusing to declare a mistrial after learning of Juror Three's incident at the Dairy Mart; 2) refusing to question the other jurors about the effect, if any, Juror Three's remarks about the incident had on their deliberations; 3) granting the State's motion to bifurcate the trial; and 4) allowing the State to put on testimony about the victim during the mercy phase of the trial. Additionally, Mr. Lister raised two issues regarding jury instructions.

## II.

## STANDARD OF REVIEW

This Court reviews appeals of circuit court orders denying habeas corpus relief under the following standard:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syllabus point 1, *Mathena v. Haines,* 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syllabus Point 1, *State ex rel. Franklin v. McBride*, 226 W.Va. 375, 701 S.E.2d 97 (2009). With these principles in mind, we consider the arguments of the parties.

## III.

## ANALYSIS

On appeal, Mr. Lister argues that the trial court erred by 1) refusing to dismiss Juror Three based on the Dairy Mart incident, (2) allowing the State to present "sympathy witnesses" during the mercy phase of the trial, and (3) failing to provide standards for the jury to consider when determining whether to recommend mercy. We address each of these alleged errors in turn.

## A. Juror Issue

The first issue is whether the circuit court erred by failing to excuse Juror Three based on the Dairy Mart incident. Mr. Lister contends that the failure to dismiss Juror Three denied him his constitutional right to a trial by an impartial jury. By contrast, the State argues that after holding a hearing on the Dairy Mart incident, the circuit court correctly found that Mr. Lister did not prove that this incident necessitated the removal of Juror Three. Our review of this issue is for an abuse of discretion:

> "A motion for a new trial on the ground of the misconduct of a jury is addressed to the sound discretion of the court, which as a rule will not be disturbed on appeal where it appears that defendant was not injured by the misconduct or influence complained of. **The question as to whether or not a juror has been subjected to improper influence affecting the verdict, is a fact primarily to be determined by the trial judge from the circumstances**, which must be clear and convincing to require a new trial, proof of mere opportunity to influence the jury being insufficient." Syllabus Point 7, *State v. Johnson*, 111 W.Va. 653, 164 S.E. 31 (1932).

Syllabus Point 1, *State v. Sutphin*, 195 W.Va. 551, 466 S.E.2d 402 (1995) (emphasis added). Once it is alleged that a juror has been improperly contacted or tampered with, the trial court is required to hold a hearing to consider the claim:

> In any case where there are allegations of any private communication, contact, or tampering, directly or indirectly, with a juror during a trial about a matter pending before the jury not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial with full knowledge of the parties; it is the duty of the trial judge upon learning of the alleged communication, contact, or tampering, to conduct a hearing as soon as is practicable, with all parties present; a record made in order to

7

> fully consider any evidence of influence or prejudice; and thereafter to make findings and conclusions as to whether such communication, contact, or tampering was prejudicial to the defendant to the extent that he has not received a fair trial.

Syllabus Point 2, *Sutphin*, *supra*. Similarly, the United States Supreme Court held that when there has been alleged improper contact with a juror, the trial court "should determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate." *Remmer v. United States*, 347 U.S. 227, 230, 74 S.Ct. 450, 451 (1954). "[T]he remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias." *Smith v. Phillips*, 455 U.S. 209, 215, 102 S.Ct. 940, 945 (1982).

In the present case, the circuit court held a *Remmer* hearing after the Dairy Mart incident was reported by Juror Three. During this hearing, Juror Three stated that she did not know the identity of the person making the comment at the Dairy Mart, stating, "It could have been anybody." As such, there was no argument by either side that the person who made the comment at the Dairy Mart was an "interested party" in the case. In Syllabus Point 3 of *Sutphin*,[4] this Court explained:

---

[4] Mr. Lister argues that this Court should depart from the standard announced in Syllabus Point 3 of *Sutphin*, and should instead adopt a presumption of prejudice standard that must be overcome by the State upon "any private communication, contact, or tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury." This argument was addressed and explicitly rejected by this Court in *State v. Trail*, 236 W.Va. 167, n. 13, 778 S.E.2d 616, 627, n. 13 (2015).

8

In the absence of any evidence that an interested party induced juror misconduct, no jury verdict will be reversed on the ground of juror misconduct unless the defendant proves by clear and convincing evidence that the misconduct has prejudiced the defendant to the extent that the defendant has not received a fair trial.

Further, this Court recently stated that "the mere allegation of juror misconduct is insufficient to warrant a new trial. . . . [There] must be proof that some improper event has occurred. Misconduct on the part of the jury as grounds for a new trial is not presumed but must be fully proved by the moving party." *State v. Trail*, 236 W.Va. at ___, 778 S.E.2d at 624 (citation and internal quotation marks omitted).[5] *See generally* 58 Am. Jr.2d New Trial § 216, at 255 (2012) ("[I]n both civil and criminal cases, a new trial generally will not be granted because of a conversation between a juror and a stranger

---

[5] Similarly, the Supreme Court has stated:

[D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation. Were that the rule, few trials would be constitutionally acceptable. The safeguards of juror impartiality, such as *voir dire* and protective instructions from the trial judge, are not infallible; it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote. Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen. Such determinations may properly be made at a hearing like that ordered in *Remmer* and held in this case.

*Smith v. Phillips*, *supra*, 455 U.S. at 217, 102 S.Ct. at 946.

9

when it does not appear that such conversation was prompted by a party or that any injustice or prejudice resulted to the complaining party. A new trial will be granted only where a conversation between a third person and a juror is of such a character as is calculated to impress the case upon the mind of the juror in a different aspect than was presented by the evidence in the courtroom or is of such a nature as is calculated to result in harm to a party on trial." (footnote omitted)).

In the present case, the circuit court conducted a *Remmer* hearing and questioned Juror Three about the Dairy Mart incident. Further, the circuit court allowed both the State and Mr. Lister to question Juror Three about the Dairy Mart incident. "Credibility determinations are properly made by the trier of fact . . . who has had the opportunity to observe, first hand, the demeanor of the witness." *Miller v. Chenoweth*, 229 W.Va. 114, 121, 727 S.E.2d 658, 665 (2012) (per curiam). Similarly, Syllabus Point 1 of *Sutphin* states, in part, "The question as to whether or not a juror has been subjected to improper influence affecting the verdict, is a fact primarily to be determined by the trial judge from the circumstances." We find that the circuit court was able to observe Juror Three's testimony and demeanor during the *Remmer* hearing. Based on this observation, the circuit court concluded that Juror Three was "very, very sincere when she said it [the Dairy Mart incident] would not affect her at all." The circuit court was in the best position to make this credibility assessment, and we find no reason to depart

from its conclusion that Juror Three could render an impartial verdict. We therefore find

no abuse of discretion.[6]

## B. Testimony During Mercy Phase

The second assignment of error raised by Mr. Lister is that the circuit court

erred by allowing the State to present "sympathy witnesses" during the mercy phase of

the trial. Mr. Lister contends that the testimony about the victim was non-probative and

unfairly prejudicial under Rules 401 and 403 of the West Virginia Rules of Evidence.[7]

---

[6] Mr. Lister also alleged that he was prejudiced because Juror Three told other members of the jury about the Dairy Mart incident. In *Bluestone Industries, Inc. v. Keneda*, 232 W.Va. 139, 144, 751 S.E.2d 25, 30 (2013), this Court stated:

> The standard for granting a new trial based on juror misconduct is not met by a showing of mere opportunity to influence a jury. In Syllabus Point 7 of *State v. Johnson*, [111 W.Va. 653, 164 S.E. 31 (1932)] this Court stated that the circumstances "must be clear and convincing to require a new trial; *proof of mere opportunity to influence the jury being insufficient*."

(Emphasis added). In the present case, Mr. Lister argues that Juror Three's discussion with some members of the jury about the Dairy Mart incident could have influenced the jury. This proof of mere opportunity to influence the jury is insufficient to grant Mr. Lister a new trial under this Court's ruling in *Bluestone Industries, Inc.*

[7] Rule 401 of the West Virginia Rules of Evidence states, "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Rule 403 of the West Virginia Rules of Evidence states, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following:

(continued . . .)

11

Conversely, the State asserts that the circuit court was permitted to allow members of the victim's family to testify pursuant to a circuit court's "wide discretion" in the sources and types of evidence used during the mercy phase of a trial. The State also argues that the family members could testify pursuant to W.Va. Code § 61-11A-2 [2012], which permits a family member of a victim of first-degree murder to make an oral statement to the court "prior to sentencing."

After review, we agree with the State and conclude that the circuit court did not abuse its discretion by permitting testimony from the victim's family members during the mercy phase of the trial. Our conclusion is based on 1) the wide discretion a circuit court is afforded in determining the type of evidence that may be admitted during the mercy phase of a trial, 2) W.Va. Code § 61-11A-2, and 3) the United States Supreme Court's ruling in *Payne v. Tennessee*, 501 U.S. 808, 111 S.Ct. 2597 (1991).

As an initial matter, we note that "[a] trial court has discretionary authority to bifurcate a trial and sentencing in any case where a jury is required to make a finding as to mercy." Syllabus Point 4, *State v. LaRock*, 196 W.Va. 294, 470 S.E.2d 613 (1996). This Court has addressed the purpose behind the mercy phase of a bifurcated trial, stating, "the issue during the mercy phase of a bifurcated trial is whether or not the defendant, who already has been found guilty of murder in the first degree, should be

unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

12

afforded mercy, *i.e.*, afforded the opportunity to be considered for parole after serving no less than fifteen years of his or her life sentence." *State v. Trail*, 236 W.Va. at __, 778 S.E.2d at 630. Similarly, Justice Workman discussed the rationale for a bifurcated proceeding in her dissenting opinion in *Schofield v. West Virginia Department of Corrections*, 185 W.Va. 199, 207, 406 S.E.2d 425, 433 (1991), stating, "The determination of whether a defendant should receive mercy is so crucially important that justice for both the state and defendant would be best served by a full presentation *of all relevant circumstances* without regard to strategy during trial on the merits." (Emphasis added).

In *State ex rel. Dunlap v. McBride*, 225 W.Va. 192, 202, 691 S.E.2d 183, 193 (2010), this Court stated, "'[a] trial court has wide discretion in the sources and types of evidence used in determining the kind and extent of punishment to be imposed. And a sentencing court is not restricted by the federal constitution to the information received in open court.' *Elswick v. Holland*, 623 F.Supp. 498, 504 (S.D.W.Va.1985) (citations omitted)." This Court also discussed the "wide discretion" afforded to trial courts during the mercy phase of a bifurcated trial in Syllabus point 7 of *State v. McLaughlin*, 226 W.Va. 229, 700 S.E.2d 289 (2010), stating:

> The type of evidence that is admissible in the mercy phase of a bifurcated first degree murder proceeding is much broader than the evidence admissible for purposes of determining a defendant's guilt or innocence. Admissible evidence necessarily encompasses evidence of the defendant's character, including evidence concerning the defendant's past, present and future, as well as evidence surrounding the nature of the crime committed by the

13

defendant that warranted a jury finding the defendant guilty of first degree murder, so long as that evidence is found by the trial court to be relevant under Rule 401 of the West Virginia Rules of Evidence and not unduly prejudicial pursuant to Rule 403 of the West Virginia Rules of Evidence.

Additionally, in *State v. Trail*, the Court stated that "the mercy phase of a bifurcated trial is a sentencing proceeding. Rule 1101(b) of the West Virginia Rules of Evidence expressly states that, unless otherwise provided by rule of this Court, the Rules of Evidence do not apply to sentencing proceedings." *Id*. at ___, n. 17, 778 S.E.2d at 630, n. 17. Therefore, the Court reasoned that "the Rules of Evidence apply to the mercy phase of a bifurcated trial only as provided by this Court. Based upon this Court's holding in Syllabus point 7 of *State v. McLaughlin*, . . . along with the application of Rule 1101(b), it is clear that only Rules 401 and 403 apply to evidentiary rulings made during the mercy phase of a bifurcated trial." *Id.*

A circuit court also enjoys wide discretion when considering evidence pursuant to Rule 403 of the West Virginia Rules of Evidence. As this Court held in Syllabus Point 10 of *State v. Derr*, 192 W.Va. 165, 451 S.E.2d 731 (1994), in part, "As to the balancing under Rule 403, the trial court enjoys broad discretion. The Rule 403 balancing test is essentially a matter of trial conduct, and the trial court's discretion will not be overturned absent a showing of clear abuse."

Based on all of the following, it is clear that a circuit court has wide discretion in the sources and types of evidence used during the mercy phase of a trial.

14

We conclude that the circuit court was within this "wide discretion" in permitting the State to elicit brief testimony about the victim during the mercy phase of the trial.[8]

The State also contends that the circuit court's ruling allowing family members of the victim to testify during the mercy phase of the trial was proper under W.Va. Code § 61-11A-2(b). It states, in relevant part, "Prior to the imposition of sentence upon a defendant who has been found guilty of a felony . . . the court shall permit the victim[9] of the crime to appear before the court to make an oral statement for

---

[8] Mr. Lister argues that a circuit court does not have wide discretion in determining the type of evidence that is admissible during the mercy phase of a trial. His argument relies mainly on a footnote in *State v. Rygh*, 206 W.Va. 295, n. 1, 524 S.E.2d 447, n. 1 (1999), which stated, "We observe that there is nothing in *LaRock* that creates, merely by bifurcating a murder trial, a qualitative change in or a substantive expansion of the scope or type of evidence that the prosecution may put on against a defendant—as compared to that evidence that would be admissible in a unitary trial." In subsequent cases decided after *Rygh*, including *McLaughlin*, *Dunlap*, and *Trail*, this Court has repeatedly stated that a circuit court has wide discretion in determining the type of evidence that is admissible during the mercy phase of a trial. As this Court made clear in *State v. Trail*, "the relevant issues are broader" during the mercy phase of a trial and a circuit court therefore enjoys wide discretion in the type of evidence that is admissible. *Id*. at ___, 778 S.E.2d at 629.

[9] The term "victim" includes a member of the deceased victim's immediate family. W.Va. Code § 61-11A-2(a) states,

> For the purposes of this section, "victim" means a person who is a victim of a felony, or, where a death occurs during the commission of a felony or a misdemeanor, the following persons shall be notified if known by the prosecutor: A member of the deceased victim's immediate family, the fiduciary of the deceased victim's estate or an adult household member residing with the victim.

(continued . . .)

15

the record[.]"  This statute is contained in the *Victim Protection Act of 1984*, W.Va. Code

§§ 61–11A–1 to 8 [1984].  West Virginia Code § 61–11A–1 of the *Victim Protection Act*

provides an extensive statement of the Legislature's intention "to enhance and protect the

necessary role of crime victims . . . in the criminal justice process and to ensure that the

state and local governments do all that is possible within the limits of available resources

to assist victims . . . of crime[.]"  With this clear legislative intention in mind, we find the

purpose of W.Va. Code § 61-11A-2(b) is plain—to allow a victim or a victim's family

member to make an oral statement to the court prior to sentencing.  Based on the plain

language of W.Va. Code § 61-11A-2(b), we find the trial court did not abuse its

---

Further, under W.Va. Code 61-11A-2(c), the following people are to be notified of their right to make an oral statement prior to sentencing: "the person who was the victim of the crime, the parent or guardian of a minor who was the victim of a crime, the fiduciary of the victim's estate if the victim is deceased and the immediate family members of the victim if the victim is deceased."  The statute does not state how many family members may make a statement "prior to sentencing."  In the present case, the circuit court allowed the State to call four witnesses to offer brief testimony.  Courts in other jurisdictions have determined that victim impact evidence is not limited to one witness.  For instance, in *Loveless v. State*, 642 N.E.2d 974 (Ind. 1994), the court found that, while it may be best for purposes of judicial economy and objectivity to use one witness to communicate the impact of a crime, Ind. Code § 35-38-1.7.1(a)(6) (Supp. 1992) does not require it. The court explained that the purpose of the statute is to guarantee that the interests of the victim are fully represented at a sentencing hearing and that, in a murder case, this might be better served by several witnesses, rather than just one.  Similarly, in *Rippo v. State*, 113 Nev. 1239, 946 P.2d 1017 (1997), *reh'g denied*, (Feb. 9, 1998) and *cert. denied*, 525 U.S. 841, 119 S. Ct. 104 (1998), the court concluded that the trial court did not abuse its discretion in allowing five witnesses to testify as to the character of the two victims and the impact the victims' deaths had on the witnesses' lives and the lives of their families, where each testimonial was individual in nature, and the admission of the testimony was neither cumulative nor excessive.

discretion by permitting the victim's family members to give brief testimony prior to sentencing.[10]

Finally, we note that the Supreme Court has held that the impact of a victim's death on the victim's family is admissible for jury consideration during the sentencing phase of a capital murder trial. In *Payne v. Tennessee*, *supra*, the Supreme Court stated that "the assessment of harm caused by the defendant as a result of the crime charged has understandably been an important concern of the criminal law, both in determining the elements of the offense and in determining the appropriate punishment." 501 U.S. at 819, 111 S.Ct. at 2605. Since harm to the victim may be used in evaluating the seriousness of a crime, the Court found that victim impact statements regarding harm to the victim should be allowed, because such information is relevant in determining an

---

[10] In addition to the three family members who testified at the mercy phase, the victim's "best friend" was also permitted to testify. Under W.Va. Code 61-11A-2(c), a victim's "best friend" is not expressly entitled to make an oral statement to the court prior to sentencing. To the extent that it was error for the trial court to permit the victim's best friend to offer brief testimony during the mercy phase, we find this error was harmless. "'A judgment will not be reversed because of the admission of improper or irrelevant evidence when it is clear that the verdict of the jury could not have been affected thereby.' Syllabus Point 7, *Starcher v. South Penn Oil Co.*, 81 W.Va. 587, 95 S.E. 28 (1918)." Syllabus Point 7, *Torrence v. Kusminsky*, 185 W.Va. 734, 408 S.E.2d 684 (1991). Moreover, "error is prejudicial and ground for reversal only when it affects the final outcome and works adversely to a substantial right of the party assigning it." *Reed v. Wimmer*, 195 W.Va. 199, 209, 465 S.E.2d 199, 209 (1995). In light of the overwhelming evidence establishing Mr. Lister's guilt, as well as the testimony of the victim's family members during the mercy phase of the trial, we believe the jury would have reached the same recommendation without the brief testimony of the victim's best friend.

17

appropriate penalty. *Id.* While *Payne* dealt with the sentencing phase of a capital murder trial, we find its reasoning to be applicable to the mercy phase of a bifurcated trial.[11]

Based on all of the following, we find the circuit court did not abuse its discretion by allowing brief testimony about the victim during the mercy phase of the trial.

---

[11] The Court in *Payne* recognized that the prosecution has a legitimate interest in using victim impact evidence to show each "victim's uniqueness as an individual human being." *Id.*, 501 U.S. at 823, 111 S.Ct. at 2607. The *Payne* Court stated:

> We are now of the view that a State may properly conclude that for the jury to assess meaningfully the defendant's moral culpability and blameworthiness, it should have before it at the sentencing phase evidence of the specific harm caused by the defendant. "[T]he State has a legitimate interest in counteracting the mitigating evidence which the defendant is entitled to put in, by reminding the sentencer that just as the murderer should be considered as an individual, so too the victim is an individual whose death represents a unique loss to society and in particular to his family." By turning the victim into a "faceless stranger at the penalty phase of a capital trial," *Booth* [*Booth v. Maryland*, 482 U.S. 496, 107 S.Ct. 2529 (1987)] deprives the State of the full moral force of its evidence and may prevent the jury from having before it all the information necessary to determine the proper punishment for a first-degree murder.

*Id.*, 501 U.S. at 825, 111 S.Ct. at 2608. The *Payne* Court thus held that if a "State chooses to permit the admission of victim impact evidence and prosecutorial argument on that subject, the Eighth Amendment erects no per se bar." *Id.*, 501 U.S. at 827, 111 S.Ct. at 2609. The majority opined that "[v]ictim impact evidence is simply another form or method of informing the sentencing authority about the specific harm caused by the crime in question, evidence of a general type long considered by sentencing authorities." *Id.*, 501 U.S. at 825, 111 S.Ct. at 2608.

**C. Jury Instructions**

Mr. Lister's final argument is that the circuit court erred by failing to provide the jury with "any standards to consider in deciding whether or not to recommend mercy." The State asserts that this Court has previously addressed this issue and concluded that the type of instruction requested by Mr. Lister may not be given. We agree.

In Syllabus Point 1 of *State v. Miller*, 178 W.Va. 618, 363 S.E.2d 504 (1987), we held, "An instruction outlining factors which a jury should consider in determining whether to grant mercy in a first degree murder case should not be given." In so holding, the Court noted that "[i]n jurisdictions where the decision to recommend mercy is left entirely within the discretion of the jury and is made binding on the trial court, it is uniformly held that an instruction which enumerates instances or suggests when a mercy recommendation might be appropriate is reversible error." *Id.* at 622, 363 S.E.2d at 508. Based on our ruling in *Miller*, we find no error with the circuit court's decision not to give an instruction outlining factors for the jury to consider in determining whether to recommend mercy.

**IV.**

**CONCLUSION**

The circuit court's December 23, 2014, order denying Mr. Lister's petition for a writ of habeas corpus is affirmed.

Affirmed.

19